UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

STERLING RESOURCES CORP., ET AL.      Civil Action No. 6:21-2517

versus                                  Judge Robert R. Summerhays

WELFONT GROUP, LLC, ET AL.              Magistrate Judge Carol B Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the "Rule 12(b)(6) Motion of the Welfont Group, LLC ("Welfont") to Dismiss Plaintiff Leblanc's Complaint in Full and to Dismiss Certain Claims of Plaintiff Sterling as Time-Barred and for Failure to State a Claim" [Doc. 27]. The motion is opposed by plaintiffs Sterling Resources Corporation and Arthur C. Leblanc Jr ("plaintiffs") [Doc. 32], and Welborn filed a reply brief [Doc. Doc. 35]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART, as explained hereinbelow.

## FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of a business dispute between Sterling and Welfont. Sterling is a Louisiana corporation, and Leblanc is a shareholder and director of Sterling. According to the Complaint, Welfont is a national commercial real estate company specializing in providing the nonprofit sector with a wide range

1

of services, including brokerage representation, advisory, underwriting, due diligence, financial services, asset management, and dispositions. Plaintiffs allege that Welfont manages each investment from deal sourcing to underwriting, to acquisition and disposition. Plaintiffs allege that, as to the transaction giving rise to the current dispute, Welfont acted as a real estate brokerage organization that held itself out as facilitating, providing, or arranging for "bargain sales" of immovable property to charitable organizations for less than fair market value in exchange for the seller receiving a tax deduction for the difference between the fair market value of the property and the cash received from the charitable organization.[1]

This action arises out of the 2017 sale of a 4.9-acre tract of property in Lafayette, Louisiana (hereinafter "the Property"). Sterling acquired the Property in 2007. In 2011, the Property appraised for $2,840,000, and it 2016, it appraised for $3,420,000. In March 2016, Sterling listed the Property for sale for $3,000,000 but did not find a buyer. After the Property was listed for sale, Sterling's listing agent attended a seminar presented by Welfont, and thereafter, the listing agent and Welfont conceived the basic outline of a deal for the sale of the Property, which was presented to Sterling and LeBlanc. The basic structure of the deal was that Sterling would sell the Property, via Welfont, to a charity, represented by Welfont, and LeBlanc would receive a charitable contribution tax deduction in the amount of the

---

[1] *See* Complaint and First Amending Complaint for Damages, Docs. 1 & 5, at para. 9 & 10.

difference between the "Qualified Appraisal" amount and the sales price of the Property to the charity. Plaintiffs allege that it was expressly understood by Welfont, Sterling, and LeBlanc that the actual beneficiary of the tax benefits resulting from the "bargain sale" would be LeBlanc, because Sterling is an S corporation. As an S corporation, Sterling passes its corporate income, losses, deductions, and credits through to its shareholders for federal tax purposes.[2]

According to the Complaint, on October 10, 2016, Sterling received a "Letter of Intent," prepared by Welfont, which stated that the Property was valued at $5,082,000 and that the selected charity was to pay a cash amount of $1,200,000. Sterling and LeBlanc allege that they expected to receive a charitable contribution in the amount of $3,882,000. The Letter of Intent also provided that Sterling could cancel the deal if the "Qualified Appraisal" of the Property was less than $4,573,800.14.

Pursuant to the Tax Code, the Internal Revenue Service (the "IRS") will only permit a taxpayer to deduct a charitable contribution from a bargain sale transaction

---

[2] Generally, an "S" corporation passes its income and all losses directly to its shareholders, without having to pay federal corporate taxes. *See generally*, *Williams v. Comm'r*, 637 F. App'x 799, 802–03 (5th Cir. 2016) ("[w]e have explained . . . [that] [g]enerally the income of a corporation is taxed twice, once at the corporate level and again at the shareholder level when the money is distributed as dividends. A small business corporation, however, may avoid this onerous double taxation by electing to be an S corporation . . . [a]n S-corp, as a pass-through entity, does not have to pay income tax. I.R.C. § 1363(a). Instead, each shareholder must pay tax on his pro rata share of the corporate profits.").

if the taxpayer provides a "qualified appraisal" conducted by a "qualified appraiser" that complies with the applicable federal income tax laws. Thus, a qualified appraisal was essential to the proposed transaction. According to the plaintiffs, Welfont requested that Sterling not select its own appraiser, but rather, that the parties use Bryant Asset Advisors ("BAA"), who Welfont represented as having experience in "bargain sale" transactions and was a "qualified appraiser" capable of providing a "qualified appraisal."[3] The BAA's appraisal (the "Bryant Appraisal") was provided to the plaintiffs on or about February 8, 2017. Plaintiffs allege that the Bryant Appraisal represented that it met the requirements for a "qualified appraisal" for purposes of a "bargain sale," and opined that the Property had a fair market value of $4,612,000.

The Property was sold on March 8, 2017. On his 2017 individual income tax return, LeBlanc claimed a charitable contribution tax deduction in the amount of $3,962,000, the difference between the $4,612,000 appraised value less the cash received of $650,000. Plaintiffs allege that on July 12, 2021, Leblanc was notified by the IRS that the charitable contribution deduction was disallowed in full due to the failure to provide a "Qualified Appraisal" by a "Qualified Appraiser."

Plaintiffs filed suit against Welfont, BAA, and individuals employed by both entities, alleging claims for breach of contract, negligence, fraud, and claims under

---

[3] *See* Complaint and First Amending Complaint for Damages, Docs. 1 & 5, at para. 32.

the Louisiana Unfair Trade Practices Act ("LUTPA"). Welfont filed the instant motion to dismiss, seeking to dismiss (1) the claims of Leblanc against it on grounds Leblanc does not have standing to assert claims in this matter; (2) certain claims of Sterling on grounds those claims are time-barred and fail to state a claim.

## LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the

complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

This matter comes before the Court through diversity jurisdiction under 28 U.S.C. §1332. In a diversity case, state substantive law is applied. *Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 2022 WL 3576759, at *3 (E.D. La. Aug. 19, 2022), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *See also Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004). Therefore, Louisiana law governs the issues before the Court.

### B. Analysis

#### 1. The Claims of Arthur C. Leblanc, Jr.

Welfont seeks to dismiss the claims of Leblanc on grounds Leblanc does not have standing to assert them, and therefore he has no right of action, because a private individual cannot sue for damages inflicted on a corporation or on the property of the company. Welfont argues that the individual owners of a company may not recover even for personal damages such as mental anguish when the

wrongful acts alleged in the plaintiff's petition were directed towards the company. Thus, Welfont argues that Leblanc, as a shareholder of the Sterling corporation, fails to state a claim for individual damages for the alleged wrong done to the company. Welfont also argues that Leblanc fails to state a claim because he does not own the subject Property and was not privy to the contract between Sterling and Welfont.

Welfont's argument that only a corporation, not its members, may sue to recover any damages it has sustained is well-taken. *See, e.g.*, *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So. 3d 246, 253–54 (La. App. 2nd Cir. 10/7/09), *writ denied*, 27 So.3d 299 (La. 2/5/10), *citing Catfish Cabin of Monroe, Inc. v. State Farm Fire & Cas. Co.,* 811 So.2d 222 (La. App. 2nd Cir. 2002); *Yarbrough v. Federal Land Bank,* 732 So.2d 1244 (La. App. 2nd Cir. 1999). Indeed, a shareholder has no separate or individual right of action against third persons for wrongs committed against or damaging to the corporation. *Glod v. Baker,* 851 So.2d 1255 (La. App. 3rd Cir. 2003), *writ denied,* 860 So.2d 1135 (La. 2003).[4]

However, plaintiffs argue that Sterling is an "S" corporation, and as such, for federal income tax purposes, Sterling's items of income, loss, deduction, and credit, including charitable contributions, are reported directly by LeBlanc on his individual

---

[4] This same rule applies even where one person may be the sole shareholder. *Taylor*, 22 So.3d at 253, *citing Mente & Company v. Louisiana State Rice Milling Co.,* 176 La. 476, 146 So. 28 (1933). A person who does business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation. *Taylor*, 22 So.3d at 253.

7

federal income tax return, i.e., these items "flow through" Sterling to LeBlanc's individual income tax return. Because the charitable contribution at issue in this case was reported directly on LeBlanc's individual income tax return, when the IRS disallowed the charitable deduction, the IRS assessed the tax deficiency, interest, and penalties directly against LeBlanc and did not issue an assessment to Sterling. Thus, plaintiffs argue that as a result of Sterling's status as an "S" corporation, LeBlanc's claim to recover the additional tax, interest, and penalties assessed against him is a direct suit, and not a derivative one.

In support of its argument, Welfont relies on jurisprudence pertaining to regular corporations, not "S" corporations. Plaintiffs, however, rely on the recent case of *J&A of Louisiana, LLC v. Bryant*, 2021 WL 4430033 (W.D. La. Sept. 27, 2021), which is instructive. In *J&A*, plaintiff J&A – a limited liability company -- listed its sole property asset, a 9.64-acre tract of land. When the property did not sell, Welfont approached J&A's agent with a proposal for a "bargain sale" whereby the property would be sold for a cash payment of $46,000 to J&A and a tax benefit to the two individual members of J&A of $459,192. *J&A*, 2021 WL 4430033 at *1. As part of the business deal, Welfont provided the two sole members of J&A with an "Opinion of Value," which placed the value of the property at $1,053,000. *Id.*

Thereafter, J&A and Food Assistance, Inc. – a client of Welfont -- entered into a Real Estate Purchase Agreement, with Welfont acting as the facilitator of the

8

transaction. *Id.* Pursuant to the Purchase Agreement, Welfont provided an appraiser who valued the property at $1,150,000. *Id.* Ultimately, J&A sold the tract at the purchase price of $28,182 on December 5, 2017. *Id.* The final appraisal was not presented to J&A until after the funds had been distributed. *Id.* At closing, J&A paid off a $139,713 mortgage indebtedness, and after the sale, the shareholders took the tax deductions they believed were owed to them. *Id.* Approximately two years later, the shareholders were informed by the IRS that the deductions were disallowed because the "appraised value has been unrealistically grossly understated." *Id.* As a result, the shareholders incurred penalties and interest from the IRS.

J&A, as well as the individual members, sued Welfont, seeking recovery for damages resulting from the disparity in J&A's sell price and fair market value of the tract, the fees and penalties assessed to the shareholders by the IRS, and other attorneys' fees and interest. *Id.*

Welfont filed a motion for partial summary judgment, seeking dismissal of the claims filed by the individual members on grounds they lacked standing to assert claims. *Id.* In its motion, Welfont argued that under Louisiana law, the individual plaintiffs, as the sole members of J&A, did not have standing to recover from damages to the LLC's property. The plaintiff members responded that, because tax penalties and fees were direct damages the members suffered as individuals -- separate and apart from the LLC's damages – they had standing to sue. *Id.* at *2.

9

In his Ruling, Judge Hicks applied the derivative test to determine whether the members of the LLC had standing to assert their claims, explaining:

> Louisiana courts have utilized a test from the American Law Institute to distinguish whether a claim is direct or indirect (also called derivative). While the test was originally applied in cases of shareholder disputes, this Court finds it illustrative and applicable to the present case because, like corporations, a L.L.C. is a separate legal entity from its shareholders. The test states:
>
>> If a shareholder can recover in a suit only by showing that the corporation was injured, then the suit is considered derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted to shareholder without proof of a corporate loss, then the suit is considered to be direct.

*Id.* at *3, *citing* 8 Glenn G. Morris & Wendell H. Holmes, La. Civ. Law Treatise, Business Organizations: Distinguishing Direct from Derivative Suits, §34.03 (2010).

Utilizing this test, Judge Hicks held that, with respect to any damages to the property of J&A, the members did not have standing to sue, which precluded the members' claims for damages related to the disparity in J&A's sell price and the fair market value, interest, judicial interest, and attorneys' fees incurred by J&A. *Id.* at *2. Nevertheless, with respect to the tax liabilities incurred by the members, Judge Hicks held that the members had standing to sue, as follows:

> The Court believes [the members'] claim to recover the tax penalties assessed against them fall under the category of a direct suit. In looking to the Internal Revenue Code, because J&A is treated as a partnership for taxing purposes, all income, deductions, credit, and penalties connected to an L.L.C. are included in the individual members' personal income tax returns. The result is that [the members] receive

10

both the benefits and the damages directly. See 26 U.S.C. §§170, 6695A (stating that deductions are denied at the partner level and that any valuation misstatement made on an individual's return shall result in a penalty to that person); *see also Intermodal Equip. Logistics, LLC. v. Hartford Accident & Indem. Co.*, No. CV G-10-458, 2012 WL 13050877, at *3 (S.D. Tex. 04/18/012), report and recommendation adopted sub nom. *Intermodal Equip. Logistics, LLC. v. Hartford Accident & Indem. Co.*, No. CV G-10-458, 2012 WL 13051090 (S.D. Tex. 05/24/2012) ("These damages, alleged to be the results of Hartford's purposeful withholding payment of its valid claim could constitute independent tort damages to support its claims that Hartford's tactics ... establish an actionable bad faith tort."). **For this reason, [the members] may attempt to seek recovery for the tax penalties and fees assessed against them as individuals.**

*Id.* at *3 (emphasis added).

In the instant case, a review of the Complaint shows that several claims are alleged by both Sterling and Leblanc, whether individually or collectively, and several categories of damages are sought, without a delineation of which damages are sought under each claim and as to each plaintiff. Nevertheless, to the extent that the claims alleged by Leblanc, and the damages he seeks, are for the additional tax, penalties, and interest he was assessed as a result of the alleged unlawful conduct of the defendants, the undersigned concludes that such claims are for direct damages to Lelanc as an individual, separate and apart from the damages to Sterling. While Welfont makes no distinction between corporations and "S" corporations in its briefing, the undersigned concludes that the tax implications suffered by the members in *J&A* are similar to the tax implications for Leblanc in this matter. Leblanc himself suffered the tax loss and was assessed additional tax, penalties, and

11

interest in his individual capacity. For this reason, any claim for damages for this additional tax, penalties, and interest is not foreclosed, and the motion to dismiss any claim for the same is DENIED. To the extent that Leblanc asserts claims for injury to the corporation itself, including damages for the disparity in Sterling's sell price and the fair market value, interest or judicial interest, and the attorneys' fees incurred by Sterling, such claims are foreclosed.

### 2. Plaintiffs' LUTPA Claim

Welfont seeks dismissal of the plaintiffs' LUTPA claims on grounds those claims have prescribed, arguing the alleged actions of Welfont took place in 2016 and 2017, and the instant lawsuit was not filed until August 2021.

La. Rev. Stat. §51:1409(E), which was amended in 2018,[5] states that an action under LUTPA "shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." Despite a line of cases decided prior to the 2018 amendment of the statute holding that the period set forth in La. Rev. Stat. §51:1409(E) is a peremptive period, since the amendment, several courts have interpreted this provision to mean that the period is

---

[5] Act Number 337 of the 2018 Louisiana Regular Session, which went into effect on August 1, 2018, changed the wording of Section 1409(E) to read as follows: "The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." In *Tripp v. Pickens*, 2018 WL 6072027, at *4 (W.D. La. Nov. 2, 2018), *report and recommendation adopted*, 2018 WL 6072017 (W.D. La. 11/20/18), the court explained that "[t]he implication of this amendment is that the legislature intended the time period to be prescriptive."

12

a liberative prescriptive period, and that the amended statute should apply retroactively. *See, e.g., Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, 2018 WL 3748399, at *9 (M.D. La. Aug. 7, 2018) (La.R.S. §51:1409(E) contemplates a prescriptive period, which means that the equitable doctrine of *contra non valentem* applies to plaintiffs' LUPTA claims; prescriptive periods are considered remedial, or procedural, in nature, and therefore are generally accorded retroactive application.); *Tripp v. Pickens*, 2018 WL 6072027 (W.D. La. Nov. 2, 2018) (accord); *Congregation of Immaculate Conception Roman Cath. Church of Par. of Calcasieu v. Sam Istre Constr., Inc.*, 253 So. 3d 196, 201 (La. App. 3rd Cir. 8/8/18) (a LUTPA claim is subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action).

In light of the more recent cases decided after the statute's amendment, the undersigned concludes that the period set forth in La. Rev. Stat. §51:1409(E) is a liberative prescriptive period. Importantly, Article 3467 of the Louisiana Civil Code provides that "prescription runs against all persons unless exception is established by legislation," however Louisiana courts have applied the jurisprudential doctrine of *contra non valentem* as an exception to this statutory rule.[6] The Louisiana

---

[6] The distinction between a peremptive period and a prescriptive period is important. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon expiration of the peremptive period." La.Civ.Code art. 3458. Peremption may not be renounced, interrupted, or suspended. La.Civ.Code art. 3461. In contrast, when claims are subject to a prescriptive, rather than peremptive, period, "prescription may be renounced,

Supreme Court recognizes four factual situations in which *contra non valentem* prevents the running of liberative prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.,* 48 So. 3d 234, 245 (La. 2010). Under the fourth category, known as the "discovery rule," knowledge sufficient to start the running of prescription is defined as "the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." *Marin*, 48 So.3d at 246, *citing Young v. International Paper Co.,* 179 La. 803, 155 So. 231 (La. 1934). This date has been found to be the date the damage becomes apparent. *Id., citing South Central Bell Telephone Co. v. Texaco, Inc.,* 418 So.2d 531, 532 (La.1982) ("Generally, the prescriptive period for damage to adjacent land commences when

---

interrupted, or suspended, and *contra non valentem* applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." *See generally Congregation of Immaculate Conception*, 253 So.3d at 200, *citing Borel v. Young*, 989 So.2d 42, 49 (La. 11/27/07), *reversed on rehearing on other grounds*, (La. 7/1/08) (citations omitted).

14

the damage becomes apparent and the injured party discovers who or what caused it"); *Dean v. Hercules,* 328 So.2d 69 (La.1976) ("[D]amages from industrial emissions and the like may not became apparent until some years after the occurrence ... [a]dditionally, it might be impossible for the injured party to know what or who caused the damage, until an investigation can be made after the damage in fact becomes apparent"); Yiannapoloulos, *Louisiana Civil Law Treatise: Predial Servitudes,* Vol. 4, § 63 (discussing obligations of vicinage) ("In accordance with Article 3493 of the Civil Code, prescription begins to run from the day the injured party acquired, or should have acquired, knowledge of the injury and other pertinent facts, namely, from the day the damage becomes apparent."). In addition, the ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct. *Griffin v. Kinberger,* 507 So.2d 821 (La.1987).

In the instant case, the plaintiffs learned of the acts giving rise to the claim in July 2021, when they were informed by the IRS that the charitable contribution they made in connection with the subject sale of property was denied because the appraiser selected by Welfont was not a qualified appraiser for purposes of the IRS's charitable deduction rules. The plaintiffs argue – and this Court accepts – that the damage they allege did not become apparent until they were informed by the IRS of

15

the denial of their deduction. The instant lawsuit was filed on August 16, 2021. Thus, because the plaintiffs' LUTPA claims were timely filed within one year of the transaction or act which gave rise to the claim, i.e., in July 2021 when the IRS informed the plaintiffs that it intended to deny the charitable contribution, the plaintiffs' LUTPA claims were timely filed.

Finally, Welfont's motion to dismiss the plaintiffs' claim for treble damages and attorneys' fees under LUTPA is DENIED. *See, e.g., McGowan v. Ramey*, 484 So. 2d 785, 791 (La. Ct. App. 1986) ("An objection of no cause of action is not the proper procedural vehicle to eliminate an isolated claim of relief from consideration by the court and/or the jury. If a court determines that a plaintiff is not entitled to certain relief, it can decline to give it. If a court determines that there is insufficient evidence to justify submitting the facts pertaining to an element of relief to a jury, it can decline to submit it. The objection of no cause of action should not have been used to eliminate the treble damage claim from consideration in this case."). Whether plaintiffs are entitled to damages is a matter reserved for trial, at which time the decider of fact will determine whether the plaintiffs are entitled to such damages based upon an examination of the evidence under the governing law.

### 3. Plaintiffs' Tort Claims

Welfont seeks dismissal of the plaintiffs' claims alleged under Article 2315 of the Louisiana Civil Code for negligence, gross negligence, negligent

16

misrepresentation, and negligent hiring or retention. Welfont argues that these claims are subject to a liberative prescriptive period of one year under Article 3492 of the Louisiana Civil Code,[7] and that all claims accrued in 2016 or 2017 and are therefore prescribed. As has already been set forth, all of the foregoing claims are subject to a liberative prescriptive period of one year, however, as with the plaintiffs' claims under LUTPA, the plaintiffs' tort-based claims are subject to the jurisprudential rule of *contra non valentem*.

The difficulty for the Court is that the Complaint does not separate the causes of action as to Sterling and as to Leblanc. For this reason, it is assumed that both plaintiffs allege causes of action for general "negligence," which caused damages to each plaintiff separate and apart from each other. Nevertheless, from a reading of Welfont's motion to dismiss, it appears Welfont is arguing only that the claims are prescribed, suggesting that the claims of negligence are alleged by Sterling only and not Leblanc, inasmuch as Welfont does not argue a lack of standing in this section of its motion. To the extent that this reading of the Complaint is accurate, the

---

[7] Article 3492 of the Louisiana Civil Code provides:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492.

undersigned concludes that the plaintiffs' tort-based claims were discovered within one year of the filing of the instant lawsuit, and therefore, these claims are not prescribed.

### 4. Violation of La. Rev. Stat. §37:1455

The plaintiffs allege that Welfont, acting as a real estate broker, violated several provisions of La. Rev. Stat. §37:1455, which sets forth a host of actions and/or failures to act that may subject a broker to censure, suspension or revocation of their real estate license or certification by the Louisiana Real Estate Commission. In their briefs, the parties dispute whether the cause of action arises under Article 2315 of the Louisiana Civil Code or under the real estate statute. A review of the briefs, however, shows that the dispute is largely semantic. Both parties appear to properly acknowledge that the cause of action itself arises under Article 2315 for violation of the duties set forth in La. Rev. Stat. 37:1455.

Considering the foregoing, inasmuch as the plaintiffs allege claims arising under Article 2315 for violation of the duties set forth in La. Rev. Stat. 37:1455, those claims have been adequately pled and are not prescribed, and the motion to dismiss them is DENIED.

Considering the foregoing,

**IT IS RECOMMENDED** that the Rule 12(b)(6) Motion of the Welfont Group, LLC ("Welfont") to Dismiss Plaintiff Leblanc's Complaint in Full and to

Dismiss Certain Claims of Plaintiff Sterling as Time-Barred and for Failure to State a Claim" [Doc. 27] is GRANTED IN PART AND DENIED IN PART, as follows:

IT IS RECOMMENDED that the motion to dismiss be GRANTED with respect to Leblanc's claims for injury to the corporation itself, including damages for the disparity in Sterling's sell price and the fair market value, interest or judicial interest, and the attorneys' fees incurred by Sterling, such claims are foreclosed. IT IS RECOMMENDED that the motion to dismiss be DENIED with respect to Leblanc's claims for any additional tax, penalties, and interest assessed against him individually by the IRS.

IT IS FURTHER RECOMMENDED that the motion to dismiss the plaintiffs' LUTPA claims on grounds they are time-barred be DENIED. IT IS FURTHER RECOMMENDED that the motion to dismiss the plaintiffs' claims for treble damages and attorneys' fees under LUTPA be DENIED at this time.

IT IS FURTHER RECOMMENDED that the motion to dismiss the plaintiffs' tort-based claims on grounds they are time-barred be DENIED.

IT IS FURTHER RECOMMENDED that the motion to dismiss the plaintiffs' claims arising under Article 2315 for violation of the duties set forth in La. Rev. Stat. 37:1455 be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 16th day of September, 2022 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE