**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **STERLING RESOURCES CORPORATION and ARTHUR C. LEBLANC, JR.** | **CIVIL ACTION** |
| **V.** | **NO.:** |
| **THE WELFONT GROUP, LLC; TAX APPRAISAL GROUP, LLC; BRYANT ASSET ADVISORS, LLC; SHAWN MARCELL; ANDREW BRYANT; CHRISTOPHER BRYANT; AND LYNDA SCULL** | **JUDGE:**<br>**MAGISTRATE JUDGE:** |

*****************************************************************************

**THIRD AMENDED COMPLAINT FOR DAMAGES**

Sterling Resources Corporation ("Sterling") and Arthur C. LeBlanc, Jr. ("Leblanc") for its complaint against The Welfont Group, LLC, Tax Appraisal Group, LLC, Bryant Asset Advisors, LLC, Andrew Bryant, Christopher Bryant, and Lynda Scull hereby respectfully aver as follows:

1.

Plaintiff, Sterling Resources Corporation, is a Louisiana corporation with a principal place of business in Lafayette Parish, Louisiana. Plaintiff, Arthur C. LeBlanc, Jr., an individual of the full age and majority and a resident of Lafayette, Louisiana is a shareholder and director of Sterling. (Sterling and LeBlanc hereinafter sometimes collectively also referred to as "Plaintiffs").

2.

Defendants herein are:

a.

The Welfont Group, LLC ("Welfont") is upon information and belief, a limited liability company organized under the laws of the state of Delaware with a principal place of business in Florida. Upon information and belief, no member of Welfont is a citizen of Louisiana.

b.

Tax Appraisal Group, LLC (“TAG”) is, upon information and belief, a limited liability company organized under the laws of and with a principal place of busines in Florida. Upon information and belief, no member of TAG is a citizen of Louisiana.

c.

Bryant Asset Advisors, LLC (“BAA”) is, upon information and belief, a limited liability company organized under the laws of the State of Indiana and with a principal place of business in Indiana. Upon information and belief, no member of BAA is a citizen of Louisiana.

d.

Andrew Bryant is a natural person of the full age of majority and, upon information and belief, a resident and domiciliary of Indiana.

e.

Christopher Bryant is a natural person of the full age of majority and, upon information and belief, a resident and domiciliary of California.

f.

Lynda Scull is a natural person of the full age of majority and, upon information and belief, a resident and domiciliary of Florida.

3.

Venue is proper in this Court because a substantial part of the events giving rise to the litigation occurred in this judicial district, the matter involved immovable property located within this judicial district, the contracts at issue were formed in this judicial district, and Plaintiff suffered harm caused by Defendants in this judicial district.

4.

a. Personal Jurisdiction

This Court has jurisdiction over each Defendant named herein because each Defendant either on their own or through their agents, at the time of the commission of the acts alleged hereunder, transacted business in the State of Louisiana, and the cause of action that is the object of this Complaint arises out of business transactions in the State of Louisiana, including specific acts within this district, including but not limited to a transaction involving the sale of immovable property within this district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

b. Subject Matter Jurisdiction

There is complete diversity among the parties the amount in controversy exceeds $75,000 and, therefore, this Court has subject matter jurisdiction under 28 U.S.C. Section 1332.

**GENERAL ALLEGATIONS**

5.

In 2007, Sterling had recently acquired immovable property located at 4750 Johnston Street in Lafayette, Louisiana for $4,300,000. Subsequently in 2007, Sterling entered into an Act of Exchange with Courtesy Acquisitions Group, Inc. to exchange the immovable property located at 4750 Johnston Street for the immovable property and any improvements thereon located at 1111 N. University Avenue (the "Property").

6.

The Property was a former KIA automobile dealership which covered 4.9 acres of land and consisted of a showroom, service center, detail shop and wash building.

7.

Sterling conducted periodic appraisals of the Property and it appraised at a current market value of $2,840,000 in 2011 and then appraised at $3,420,000 in 2016.

8.

On or about March 17, 2016 Sterling listed the Property for sale with an asking price of $3,000,000.

**BACKGROUND AS TO THE WELFONT GROUP, LLC**

9.

Welfont markets itself as a national commercial real estate company specializing in providing the nonprofit sector with a wide range of services, including brokerage representation, advisory, underwriting, due diligence, financial services, asset management and dispositions. Welfont manages each investment from deal sourcing to underwriting, to acquisition and disposition.

10.

More specifically as to the transaction outlined below which the subject of this litigation, Welfont is a real estate brokerage organization that holds itself out by solicitation, advertisement, or otherwise in Louisiana and elsewhere as facilitating, providing, or arranging for “bargain sales” of immovable property to charitable organizations for less than fair market value in exchange for the seller receiving a tax deduction for the difference between the fair market value of the property and the cash received from the charitable organization.

11.

In order to meet the expectations of both the buyer and the seller in a bargain sale, there must be an appraisal of the subject property that is credible to the Internal Revenue Service ("IRS") and that meets all U.S. Treasury regulations (a "Qualified Appraisal").

12.

Welfont utilizes a select network of appraisers to provide the Qualified Appraisal for these transactions, including but may not be limited to TAG and/or BAA.

13.

Welfont, and/or certain high-level agents and/or employees of Welfont, manage or direct TAG in securing and selecting the appraisers to provide the Qualified Appraisal.

14.

The last registered Manager of TAG is Lynda Scull.

15.

TAG and Lynda Scull were domiciled in Florida at all pertinent times herein.

16.

Upon information and belief, all injurious conduct of TAG and Lynda Scull occurred in Florida and the resulting injury occurred in Louisiana to Sterling.

17.

BAA is a real estate appraisal organization that holds itself out by solicitation, advertisement, or otherwise in Louisiana and elsewhere as providing Qualified Appraisals for "bargain sales" of immovable property to charitable organizations. Upon information and belief and based upon the BAA and TAG appraisal engagement letter, TAG arranged for and/or selected BAA to perform the Qualified Appraisal at issue.

**PRELUDE TO THE DEAL**

18.

After the property was listed for sale on or about March 17, 2016, Sterling's listing agent, Dewitt David ("David") of Van Eaton & Romero ("Van Eaton"), informed Sterling that he had a potential buyer for the property who David identified as Jean Guidry ("Guidry") of JP Property Management LLC ("JP"). David was also the broker for Guidry and met with Guidry but sales terms could not be agreed upon as Guidry was unable to secure financing for the deal.

19.

At some point thereafter, David attended a conference and/or seminar at which Welfont made a sales presentation regarding "bargain sale" transactions.

20.

Upon information and belief, David thereafter contacted Welfont to put together the basic framework of the deal which is the subject of this litigation and thereafter David brought this proposal to Sterling as conceived by Welfont.

21.

The structure of the proposal as conceived by Welfont and presented to Sterling was a legal transaction by which the shareholder of Sterling, LeBlanc, would receive a tax deduction based upon the difference between the Qualified Appraisal amount and the sales price. This transaction appeared beneficial and advantageous to Sterling and LeBlanc, so Sterling and LeBlanc agreed to proceed with the Qualified Appraisal and bargain sale based on the representations made by Welfont through its members, agents, representatives, and/or employees including but not limited to Shawn Marcell and Lynda Scull.

22.

Welfont also advised that it represented a qualified charitable organization, Master's Commission International Network, Inc. ("Master's"), for purposes of the bargain sale, and thereby brought Master's into the deal as the proposed 501(c)(3) organization to purchase the Property in a bargain sale for less than the fair market value as determined by the Qualified Appraisal and thereby complete the bargain sale.

23.

Welfont further explained, and the parties herein all understood, that the actual beneficiaries of the tax benefits resulting from the bargain sale would flow through Sterling to LeBlanc.

24.

Unbeknownst to Sterling and/or LeBlanc (but known to Welfont and Master's), Master's with Welfont/Marcell as their broker as seller, were in the process of negotiating a subsequent sale of the Property to JP, at a price substantially less than fair market value, but substantially more than the cash received by Sterling from Master's in connection with the bargain sale.

**THE LETTER OF INTENT**

25.

On October 10, 2016, Sterling received a "Letter of Intent" for purposes of outlining the terms of the transaction deal to sell the Property to a 501(c)(3) organization, Master's, which designated Master's broker as Shawn Marcell of Welfont.

26.

The Letter of Intent provided that Master's was to purchase the property through an Internal Revenue Code ("IRC") Section 170 Bargain Sale.

27.

The Letter of Intent provided an "Opinion of Value" of $5,082,000, a cash amount to be paid of $1,200,000 and that Sterling and LeBlanc would therefore receive a charitable contribution amount of $3,882,000.

28.

The Letter of Intent provided that Sterling was to pay for a Qualified Appraisal to be performed by a Qualified Appraiser that complies with the requirements of IRC Section 170 and the regulations, rulings and other pronouncements of the Internal Revenue Service, including current IRS Publication 561.

29.

The Letter of Intent provided that, if the Qualified Appraisal of the Property was less than 90% of $5,082,000, or $4,573,800, then Sterling could cancel the proposed transaction via written notice within seven days of receipt of the appraisal.

30.

The Letter of Intent provided that the offer enclosed therein was only valid for seven business days.

31.

Sterling signed the Letter of Intent on October 18, 2016.

32.

Welfont requested that Sterling not obtain its own Qualified Appraisal but, instead, Welfont requested that Sterling use BAA, via TAG, based on Welfont representing to Sterling that BAA was accustomed to appraising these sorts of transaction.

33.

Welfont and/or TAG selected BAA to provide the Qualified Appraisal.

**REAL ESTATE PURCHASE AGREEMENT**

34.

Master's and Sterling entered into a Real Estate Purchase Agreement (the "Agreement") with an effective date of December 9, 2016.

35.

The Agreement provided that the sale was to be bargain sale as defined by Section 170 of the IRC, as amended, and the related Treasury regulations.

36.

The Agreement provided that Welfont group was to "coordinate and facilitate the Appraisal with an independent appraisal management company…" that was to be in conformity with a "Qualified Appraisal" as defined in the Internal Revenue Code of 1986, Section 170, as amended, and the treasury regulations promulgated thereunder.

37.

The Agreement provided "…that no other real estate brokerage firm, broker, salesperson or finder are involved in any aspects of this Agreement other than Van Eaton & Romero Commercial ("Seller's Agent"), which represents the Seller's interest and The Welfont Group or its assignee ("Buyer's Agent") which represents the Buyer's interest in this transaction."

38.

The Agreement provided that Sterling was to pay a sales commission equal to 4% of the combined cash payment at closing and an estimated net tax savings, but not to exceed $96,000, which commission was to be shared equally with seller and buyer's agent.

**THE APPRAISAL REPORT**

39.

Welfont and/or TAG represented to Defendants that BAA was a Qualified Appraiser who could provide Defendants with a Qualified Appraisal for purposes of the bargain sale. Welfont and/or TAG promoted, endorsed and recommended and selected BAA for this appraisal.

40.

On February 8, 2017, Andrew Bryant prepared and forwarded an "Appraisal Proposal" to Sterling, Scull and David whereby BAA and Andrew Bryant agreed to:

a. Determine the Bargain Sale Opinion of Value, based on IRS Publication 561.

b. Conduct an inspection of the property.

c. Apply the three traditional approaches to value, per IRS Publication 561.

d. Provided for a $5,000 fee inclusive of all expenses.

e. Provided that the appraisal would be prepared and conveyed in compliance with the Uniform Standards of Professional Appraisal Practice and "Performed by Andrew J. Bryant… an Illinois Certified General Appraiser, working under a temporary permit to practice in the State of Wyoming."

41.

The Appraisal Proposal was signed by Lynda Scull as the "Client" on February 8, 2017.

42.

On February 28, 2017, Sterling received "An Appraisal Report Concerning the Fair Market Value…" of the Property (the "BAA Report").

43.

The BAA Report was prepared by Andrew J. Bryant and Christopher D. Bryant of BAA.

44.

The BAA Report indicated that the Property was "inspected" on February 21, 2017 by Christopher D. Bryant.

45.

The BAA Report indicated and acknowledged that it was to be used in support of a bargain sale to a charitable organization.

46.

The BAA Report opined that the fair market value of the Property was $4,600,000 and an additional $12,000 in furniture, fixtures, and equipment as of February 21, 2017.

47.

The BAA Report indicated it was prepared in conformity with the Uniform Standards of Professional Appraisal Practice and the Appraisal Institute's ethical requirements.

48.

The BAA Report indicated that it was in compliance with IRS Publication 561.

49.

The BAA Report indicated and acknowledged that Sterling may rely upon the BAA Report in evaluating the Property's market value for financial decision-making purposes relating to a bargain sale of the Property.

50.

Andrew J. Bryant and Christopher D. Bryant both certified that the facts contained in the BAA report were true and correct.

51.

Upon information and belief, BAA, Andrew J. Bryant and Christopher D. Bryant were domiciled in Indiana and/or California at all pertinent times herein, such that the injurious conduct occurred in Indiana and/or California and the resulting injury occurred in Louisiana to Sterling.

**THE TRANSACTIONS- MARCH 2017**

52.

On March 8, 2017, Sterling sold the Property via a bargain sale to Master's for a cash price of $650,000.

53.

Sterling utilized the bargain sale to receive a charitable contribution tax deduction for the difference of the appraised value, $4,612,000, and cash received, $650,000.

54.

Upon information and belief, the $650,000 cash payment received by Sterling from Master's was actually cash that was deposited by JP into an escrow account, none of which was disclosed to Sterling.

**THE SUBSEQUENT SALE**

55.

On March 8, 2017, within hours of the aforementioned $650,000 bargain sale to Master's, Master's then sold the Property to JP for $1,262,000, a handsome profit to Master's.

56.

Master's agent/broker in the Subsequent Sale to JP was Shawn Marcell and/or Welfont.

57.

Welfont profited in the form of a commission, rebate, and/or direct profit from the Subsequent Sale to JP.

58.

Welfont did not disclose this commission, rebate, and/or direct profit to Sterling.

**THE AUDIT**

59.

On July 12, 2021, the IRS issued an "Explanation" asserting that Sterling's charitable contribution deduction was disallowed in full due to the failure to provide a Qualified Appraisal by a Qualified Appraiser. Alternatively, the IRS asserts that the true fair market value was the $1,262,000, the price at which Master's sold and/or flipped the property to JP hours after the bargain sale involving Sterling, which thereby results in a $612,000 charitable donation to Sterling rather than a charitable donation of $3,962,000.

60.

As it stands now, Plaintiffs face additional income taxes, penalties and/or other exposure to the IRS due to the individual and collective actions of Defendants, in addition to substantial additional cost and expenses including attorney fees and CPA fees.

61.

Plaintiffs are continuing to contest the audit(s) and the positions advanced by the IRS in connection therewith which have not yet reached a resolution and, as such, the allegations made

herein are in the alternative and/or in the event Plaintiffs are deemed to have sustained recoverable damages as a result of the audit process.

**FALSE STATEMENTS OF BAA, ANDREW BRYANT, CHRISTOPHER BRYANT, TAG AND/OR LYNDA SCULL**

62.

Andrew Bryant was not an Illinois Certified General Appraiser on February 8, 2017.

63.

Andrew Bryant was not a licensed Appraiser in Louisiana at any point in time from February 8, 2017 through February 21, 2017.

64.

BAA, the entity, was not a licensed Appraiser in Louisiana at any point in time from February 8, 2017 through February 21, 2017.

65.

No Appraiser employed by BAA was a licensed Appraiser in Louisiana on February 8, 2017.

66.

Andrew Bryant did not prepare the Appraisal.

67.

Upon information and belief, Christopher Bryant did not inspect the Property on February 21, 2017.

68.

BAA increased the cost of the appraisal from the original agreed price of $5,000 to $6,500 telling Sterling that this was due to the appraisal costs of the furniture and fixtures; however, upon

information and belief, this additional $1,500 was actually so as to allow an undisclosed payment to be made from BAA to TAG and/or Lynda Scull.

69.

The Appraisal was not prepared in conformity with the requirements of the Uniform Standards of Professional Appraisal Practice; Financial Institutions, Reform, Recovery, and Enforcement Act of 1989, IRS Publication 561, and the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

## CAUSES OF ACTION

### Breach of Contract

70.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

71.

Sterling and Welfont were parties to the Agreement and the Letter of Intent, which was a legally enforceable and binding contract pursuant to which Welfont agreed to obtain a Qualified Appraisal of the Property with a Qualified Appraiser.

72.

Although Sterling performed its obligations under the Agreement and the Letter of Intent, Welfont breached its obligations under the Agreement and the Letter of Intent by failing to obtain a Qualified Appraisal of the Property.

73.

Sterling, TAG, and BAA were parties to the BAA contract to conduct the Qualified Appraisal, which was a legally enforceable and binding contract by which TAG undertook for the

benefit of Sterling an obligation to obtain a Qualified Appraisal of the Property with a Qualified Appraiser.

74.

Although Sterling fully performed its obligations thereunder, TAG and BAA breached their obligations under the BAA contract by failing to obtain a Qualified Appraisal of the Property.

75.

Welfont's breaches of the Agreement have caused Plaintiffs to suffer actual damages, including additional tax liability, interest, penalties, prejudgment interest, costs, expenses, and attorney's fees.

76.

TAG's and BAA's breaches of the BAA contract have caused Plaintiffs to suffer actual damages, including additional tax liability, interest, penalties, prejudgment interest, costs, expenses, and attorney's fees.

**Negligent Misrepresentation**

77.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

78.

During the course of service as a real estate broker, Welfont's employees, agents, and representatives negligently and/or intentionally represented to Sterling that:

(a) the Property had a fair market value of (at various times) $5,082,000, $4,706,000, and $4,612,000;

(b) Welfont would obtain a Qualified Appraisal of the Property with a Qualified Appraiser;

(c) BAA, Christopher Bryant and/or Andrew Bryant were "Qualified Appraisers"; and

(d) Sterling reserves the right to supplement and/or amend as permitted by law.

79.

During the course of service as a real estate broker, Welfont's employees, agents, and representatives and/or Lynda Scull failed to disclose to Sterling that:

(a) principal members and agents of Welfont, including Shawn Marcell, were then currently serving as three out of the five members and/or officers of Master's.

(b) principal members and agents of Welfont were involved as principal members and officers of prior 501(c)(3) organizations that had participated in prior bargain sale agreements with Welfont, which 501(c)(3) organizations had been audited by the IRS, which resulted in the loss of non-profit 501(c)(3) status.

(c) principal members and agents of Welfont were involved as principal members and officers of prior 501(c)(3) organizations that had participated in prior bargain sale agreements with Welfont, which 501(c)(3) organizations had since gone defunct, declared bankruptcy, resulted in bargain sale audits whereby the deduction was disallowed, and/or were subject to media scrutiny due to the business practices of Welfont.

(d) Master's had agreed to have Welfont and Marcell broker an immediate-same-day-sale of the Property to JP at a price substantially less than fair market value, with David and Van Eaton acting as the buyer's agent.

(e) Sterling reserves the right to supplement and/or amend as allowed by law.

80.

Welfont's employees, agents, and representatives including and/or Lynda Scull made the foregoing misrepresentations willingly and knowingly and/or negligently.

81.

Welfont's employees, agents, and representatives including and/or Lynda Scull had a legal duty owed to Sterling to supply correct information and to disclose information.

82.

During the course of their services as an appraiser, BAA, Andrew Bryant, and Christopher Bryant made numerous misrepresentations (alleged alternatively as False Statements hereinabove) alleged herein above concerning their credentials, certifications, competency, experience, training, the cost of their services, fee sharing, the fair market value of the Property, property inspection, comparable sales, and other misrepresentations and falsities to be proven at trial.

83.

BAA, Andrew Bryant, and Christopher Bryant had a legal duty owed to Sterling to supply correct information and to disclose information.

84.

BAA, Andrew Bryant, and Christopher Bryant made the foregoing misrepresentations willingly and knowingly and/or negligently.

85.

Pursuant to the doctrine of vicarious liability, BAA is liable for the acts and/or omissions of Andrew Bryant and Christopher Bryant; Welfont is liable for the acts and/or omissions of Welfont's employees, agents, and representatives including Shawn Marcell and Lynda Scull; and TAG is liable for the acts and/or omissions of Scull.

86.

All of the above described falsities, misrepresentations and/or failure to disclose information when there was a legal duty to speak, were made for purposes of inducing Sterling to enter into the Agreement, so that Sterling would purchase the BAA Appraisal and then sell the Property to Master's.

87.

Welfont, BAA, TAG, Scull, and Andrew and Christopher Bryant were negligent, grossly negligent, reckless, willful, and /or wanton in making these alleged representations and/or failures to disclose information.

88.

Sterling reasonably relied on the representations and information supplied to it by Welfont, BAA, TAG, Scull, and Andrew and Christopher Bryant and as a direct and proximate result thereof, Sterling has suffered actual damages, including additional tax liability, interest, penalties, prejudgment interest, costs, expenses, and attorney's fees for which Defendants are liable.

89.

Defendants acted intentionally or with such reckless disregard as to the truth such that Sterling is entitled to punitive damages against Defendants in an amount to be determined by the Jury.

**Article 2315 – Statutory Violations that Caused Sterling Damages**

90.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

91.

As a real estate broker, Welfont owed specific statutory legal duties, including but not limited to those owed pursuant to La. R.S. 37:1455.

92.

Welfont breached the duties owed to Sterling including but not limited to: providing correct information, communicating accurate information, accepting, giving, or charging any undisclosed commission or rebate, accepting, giving, or charging any undisclosed direct profit, knowingly making false representations to a party to a real estate transaction, failing to advise all parties to the transaction in writing of the compensation being received from any source in connection with the transaction, and/or using advertising that is misleading or inaccurate.

93.

As a real estate broker, Welfont owed a duty to supervise its agents, representatives and/or employees involved in this transaction including Shawn Marcell and Lynda Scull.

94.

Breaches of the foregoing by Welfont have caused Sterling to suffer damages.

95.

Welfont is liable to Sterling for the damages caused by Welfont pursuant to Louisiana Civil Code article 2315.

**Negligence**

96.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

97.

BAA, and Andrew and Christopher Bryant did not perform the Appraisal in accordance with the skill usually exercised by those in their profession in the same general area.

98.

BAA, and Andrew and Christopher Bryant owed a duty to Sterling to perform the Appraisal in accordance with the skill usually exercised by those in their profession in the same general area.

99.

Welfont, TAG and Scull owed a duty to Sterling to select a Qualified Appraiser in accordance with the skill usually exercised by those in their profession in the same general area.

100.

Welfont, TAG and Scull failed to perform their duty of selecting a Qualified Appraiser in accordance with the skill usually exercised by those in their profession in the same general area.

101.

The breaches of BAA, and Andrew and Christopher Bryant, Welfont, TAG caused Sterling to suffer damages for which Defendants are liable.

**Fraud**

102.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

103.

All of the false statements and/or suppression of the truth described herein, and others to be supplemented, were made by Defendants with the intention to obtain an unjust advantage over Sterling or to cause a loss to Sterling.

104.

Defendants had an affirmative duty to speak and then failed to do so.

105.

Sterling did not know, nor could it reasonably have known, of the fraud perpetuated upon Sterling by Defendants until less than one year prior to the filing of this Petition.

106.

Defendants are solidarily liable for the damages caused to Sterling by Defendants' fraudulent acts, statements, misrepresentations, and/or failures to speak when there was a legal duty to do so.

**Louisiana Unfair Trade Practices Act**

107.

Sterling incorporates by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

108.

Defendants' collective and individual conduct in this transaction is an unfair method of competition, and an unfair or deceptive act in the conduct of trade or commerce.

109.

Defendants' collective and individual conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.

110.

Defendants' collective and individual conduct involves elements of fraud, misrepresentation, deception, and other unethical conduct.

111.

Sterling did not know, nor could it reasonably have known, of Defendants collective and individual violations of the Louisiana Unfair Trade Practices Act until less than one year prior to the filing of this Complaint.

112.

Sterling prays for a trial by jury.

113.

Also made Defendant herein, pursuant to the provisions of the Louisiana Direct Action Statute, La. R.S. 22:1169, is:

a. Hiscox Insurance Company, Inc. (hereinafter referred to as "Hiscox"), a foreign insurance company having its domicile in the state of Illinois and authorized to do business in the state of Louisiana, and which can be served through its agent for service of process, according to the Louisiana Department of Insurance, through the Louisiana Secretary of State at 8585 Archives Ave., Baton Rouge, Louisiana 70809.

114.

Hiscox issued a policy for professional liability insurance to The Welfont Group, LLC, which policy affords coverage for the liability of Welfont to Plaintiffs as set forth herein.

115.

Removed.

116.

Sterling and LeBlanc pray for a trial by jury.

117.

Also made Defendant herein, pursuant to the provisions of the Louisiana Direct Action Statute, La. R.S. 22:1169, is:

a. Continental Casualty Company. (hereinafter referred to as "Continental"), a foreign insurance company having its domicile in the state of Illinois and authorized to do business in the state of Louisiana, and which can be served through its agent for service of process, according to the Louisiana Department of Insurance, through the Louisiana Secretary of State at 8585 Archives Ave., Baton Rouge, Louisiana 70809.

118.

Also made Defendant herein is Shawn Marcell, a resident of Florida who lives at 5820 Mezzana Run, Palmetto, FL 34221.

119.

Continental issued a policy for professional liability insurance to Shawn Marcell, which policy affords coverage for the liability of Shawn Marcell to Plaintiffs as set forth herein.

WHEREFORE, Plaintiffs pray that, after due proceedings, this Court enter judgment in favor of Plaintiffs and against The Welfont Group, LLC, Tax Appraisal Group, LLC, Bryant Asset Advisors, LLC, Andrew Bryant, Christopher Bryant, and Lynda Scull for all losses and damages sustained, as set forth more fully above, and awarding:

a. Compensatory, punitive, and consequential damages in an amount to be proven at trial;

b. Prejudgment and post-judgment interest at the maximum legal rate;

c. Court costs and reasonable attorney's fees incurred in by Sterling;

d. Additional tax liability, interest and penalties assessed to Plaintiffs;

e. Statutory penalties where permitted;

f. Attorneys' fees where permitted;

g. Professional accounting, legal or other fees incurred by Plaintiffs in connection with the IRS examination; and

h. For such other equitable relief as Plaintiffs shall show themselves justly entitled and/or that this Court deems proper.

Respectfully submitted,

BY:___/s/*Brian J. Lindsey*____________________
ROBERT M. KALLAM (#20242)
BRIAN J. LINDSEY (#35887)
KEAN MILLER LLP
600 Jefferson Street, Suite 1101
Lafayette, LA 70501
Telephone: (337) 235-2232
E-mail:

Attorneys for Plaintiffs, Sterling Resources Corporation and Arthur C. LeBlanc, Jr.

AND

OTTINGER HEBERT, L.L.C.

Patrick S. Ottinger (Bar Roll No. 8727)
William H. L. Kaufman (Bar Roll No. 29929)
Valerie V. Guidry (Bar Roll No. 30780)
1313 West Pinhook Road (70503)
Post Office Drawer 52606
Lafayette, Louisiana 70505-2606
Phone: (337) 232-2606
Fax: (337) 232-9867
Email: psottinger@ohllc.com
whkaufman@ohllc.com
vvguidry@ohllc.com

Attorneys for Plaintiffs, Sterling Resources Corporation and Arthur C. LeBlanc, Jr.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on the 29th day of July 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. All other parties will be served in accordance with law.

______*/s/Brian J. Lindsey* ________________
BRIAN J. LINDSEY